THE SPRINGFIELD FIRE AND MARINE INSUR- ANCE COMPANY, Appellant, v. JAMES W. LUSK et al., Receivers of the ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY, Respond- ents.

St. Louis Court of Appeals. Opinion Filed November 4, 1919. Re-filed June 17, 1920. Separate Concurring Opinion Filed June 17, 1920.

1. **INSTRUCTIONS: Railroads: Fires: Instruction Declaring Insufficient Finding of Probability That Fire Was Caused by Sparks Erroneous.** In an action against a railroad company for damages caused by fire alleged to have been communicated by a locomotive engine, etc., part of an instruction telling the jury that, "It is not sufficient to entitle plaintiff to a verdict in this case that there may be a probability or even a strong suspicion, that the fire mentioned in the evidence was caused by sparks from one of defendant's trains," was misleading and prejudicial.

2. **RAILROADS: Fires: Property Destroyed by Fire from Trains: Proof Required as to Origin of Fire: Circumstantial Evidence.** In an action against a railroad for damages caused by fire alleged to have been communicated by a locomotive engine, etc., while it is true that it is the duty of the jury to determine the ultimate issue of fact, viz., whether the fire did or did not originate as alleged, yet it is not necessary that there be direct and positive evidence that the fire so originated; on the contrary the jury may make such finding upon all of the facts and circumstances in the case as shown by the circumstantial evidence adduced, and between two hypotheses appearing from such evidence the jury may choose that which in their judgment is the more reasonable and probable, and by adopting that hypothesis, say by their verdict that the fire did or did not originate in the manner alleged, and in so determining this ultimate issue of fact, the jury may rightfully adopt the hypothesis that the fire was communicated by a spark or sparks from defendant's engine, even though the evidence adduced in support thereof is not such as to entirely negative every other hypothesis as to the origin of the fire.

Appeal from the Circuit Court of Franklin County.— *Hon. R. A. Breuer,* Judge.

REVERSED AND REMANDED.

*Leonard & Sibley* and *Jesse H. Schaper* 'or appellant.

(1) It is error to select one of the issues, and instruct the jury that the burden was not on the defendant to prove the facts that would support or defeat the issue. It singles out the issue and creates a false impression in the mind of the jury. (2) It is error to instruct that no burden rested on defendant to explain "how or by what means said fire was started." Colloquial English applies the phrase, "starting a fire," to mean a deliberate, human, intentional act and the effect is to raise in the minds of the jury the idea of an intentional act on the part of some human being. (3) It is error to instruct that "probability" of defendants fault, established by the evidence, was not sufficient to entitle plaintiff to a verdict. "Probability" is the equivalent of "preponderance of evi-

dence," and is the correct standard of proof required to support a verdict. 17 Cyc. 755; 10 R. C. L. 1012; 17 Cyc. 761; McKee v. Verdin, 96 Mo. App. 271; Bauer Gros. Co. v. Sanders, 74 Mo. App. 660; Willard Oil Co. v. Riley, 29 Okla. 19; Lead Co. v. Railroad, 123 Mo. App. 400-402; Sheldon v. Railroad, 14 N. Y. 223; Field v. Railroad, 32 N. Y. 339; Railroad v. Richardson, 91 U. S. 470; Smith v. Railroad, 63 N. H. 25; Waddell v. Railroad, 146 Mo. App. 606; Campbell v. Railroad, 121 Mo. 349; Markt v. Railroad, 139 Mo. App. 456; Hudspeth v. Railroad, 172 Mo. App. 586; Cass County v. Green, 66 Mo. 498; Stanton v. So. Ry., 56 S. C. 398; Gallagher v. Crooks, 132 N. Y. 344; Hoffman v. Loud, 111 Mich. 158; Lillstrom v. Railroad, 53 Minn. 468; Felch v. Railroad, 66 N. H. 323; Bain v. State, 74 Ala. 39; Crabtree v. Reed, 50 Ill. 207; Williams v. State, 98 Ala. 22; Gilmore v. State, 99 Ala. 159; Fuller v. Rounceville, 29 N. H. 563. (4) It is error to instruct that "probability or even a strong suspicion" of defendant's fault, was not sufficient to entitle plaintiff to a verdict. "Suspicion" has no legal standing as the basis of a verdict. The phraseology used conveyed the meaning that probability was of less legal weight and importance than a mere suspicion. Railroad v. Shieder, 88 Tex. 165; Kinstan Mills v. Kuhne, 129 App. Div. (N. Y.), 258; Giddens v. Misk, 4 Ga. 370; McCalla v. State, 66 Ga. 348; Stuart v. Farmers Bank, 137 Wis. 66; U. S. v. Green, 136 Fed. 618, 628; Am. Surety Co. v. Pauly, 72 Fed. 470, 477. (5) It is error for the court to tell the jury that, to hold defendant, it must "find and believe from the evidence" that the sparks caused the fire, and also to tell them, in the same instruction, that, to hold defendant, they must find "from the greater weight of all the credible evidence in the case" that the sparks caused the fire. If these two rules are contradictory, one of them is necessarily error. If they are not contradictory, then it was error to give undue emphasis to the proposition of law by means of the repetition. 38 Cyc. 1681; Green Ridge Railroad Co. v. Brinkman, 64 Md. 61; Waller v. Ross,

100 Minn. 12; 14 R. C. L., p. 779. (6) It was error to instruct that the plaintiff sought to recover solely upon circumstantial evidence, when, in point of fact, all or most of plaintiff's evidence was direct. 1 Jones on Evidence, p. 14; Watson v. Adams, 65 So. Rep. 532; Hudspeth v. Railroad, 155 S. W. 868; Dunn v. State, 63 S. W. 573; Sieber v. Pellitt, 200 Pa. 58; Bryce v. Railway-129 Iowa, 342. (7) It was error to instruct that plaintiff's evidence was "purely and altogether" circumstantial, particularly when contrasted, in the same instruction, with "credible evidence." This minimizes the value of circumstantial evidence, is a comment on the evidence, and invades the province of the jury. It deprecates such of plaintiff's evidence as may be considered circumstantial. It is equivalent to saying: "Plaintiff's evidence is nothing in the world but circumstantial evidence." 1 Blashfield on Instructions, Sec. 396; Minniard v. Com., 158 Ky. 218; Rea v. Missouri, 17 Wall. 532; 38 Cyc. 1739; Glass v. Cook, 30 Ga. 133; McKay v. Seattle Co., 16 Wash. 257; 1 Jones on Evidence, p. 38. (8) It is error to press on the attention of the jury the question of the diligence or lack of diligence of the insured in rescuing goods from a burning building. The question for the jury was not whether the insured was sufficiently industrious, but whether it was safe to have continued longer the work of salvaging the goods.

*W. F. Evans, Edw. T. Miller* and *James Booth,* for respondents.

(1) That there is or might be a probability that the fire was communicated by sparks from one of defendants' engines, is not, of itself, sufficient to authorize a verdict for plaintiff in this class of cases. Fritz v. Railroad, 243 Mo. 62; Bowden v. Railroad, 189 Mo. App. 148; Manning v. Railroad, 137 Mo. App. 631; Peck v. Railroad, 31 Mo. App. 123; Peffer v. Railroad, 98 Mo. App. 291; Bank v. Railroad, 98 Mo. 330; Gibbs v. Railroad, 104 Mo. App. 276; Funk v. Railroad, 123 Mo. App. 169;

Moore v. Railroad, 28 Mo. App. 622; Glick v. Railroad, 57 Mo. App. 97; Yeager v. Railroad, 61 Mo. App. 594; Perkins v. Railroad, 103 Mo. 52; Frame v. Railroad, 209 S. W. 314; Taylor v. Lusk, 194 Mo. App. 133.   (2) This case was fairly tried on the issue as to whether or not the fire in question was caused by sparks from one of defendants' engines, and the jury must be persumed to be men of intelligence and not misled by the use of mere surplus words, if any were used, in the instructions. Thornberry v. Thompson, 18 Mo. App. 426; Ghio v. Railroad, 125 Mo. App. 716; Baird v. Wilks, 218 S. W. 920. (3) The rule in this State is that there must be not only a probability that the fire was cause by sparks from the engine, but it must be improbable that it started in any other manner.   Frame v. Railroad, supra; Taylor v. Lusk, supra.  In other words, circumstances are only sufficient to make a prima facie case for plaintiff when it is shown by such circumstances, not only that the fire was probably caused by sparks from an engine, but that such is the most probable source of its origin.   Frame v. Railroad, supra.   (4) The probability as to the origin of the fire must be strong enough to induce in the minds of the jury a belief that the fire in fact did orginate from a locomotive.   Lead Co. v. Railroad, 123 Mo. App. 394. (5) In this case there was affirmative evidence on part of respondents not only that fire from one of their locomotives did not cause the fire in question, but that it was actually caused by an independent and outside agency.   Under these facts what is said by the courts as to the probable origin of fires does not apply to the facts of this case. Bowden v. Railroad, 184 S. W. 1174; Frame v. Railroad, supra.   (6) We are admonished by the statute that judgments are not to be reversed in the absence of error materially affecting the merits of the case.   Sec. 2082, R. S. Mo. 1909.   (7) There is no hard and fast rule as to what words shall be used in instructions to juries. Schwabe v. Estes, 218 S. W. 908.   (8) If, instead of repeating, respondents' instruction had been cut and made into three or four separate instructions containing the

same identical language, it would not have been error to have given it. Baird v. Wilks, 218 S. W. 920. (9) Plaintiff's evidence was all circumstantial and under such circumstances it is a rule recognized by all of the courts that respondents were entitled to a cautionary or admonitory instruction; and instruction No. 2 was simply admonitory or cautionary. Hughes, Instructions to Juries, Sec. 49, p. 44. (10) Judgments can only be properly reversed by Appellate Courts for errors of commission and not for errors of omission. If instruction No. 2 should have defined circumstantial evidence and made it even plainer to the jury that a recovery could be properly had under such evidence, and failed or omitted to do so, then the proper remedy for plaintiff was to ask an instruction submitting the omitted matters, and in the absence of such request there is no just cause for complaint. Hooper v. Railroad, 125 Mo. App. 332. (11) The respondents were entitled to a direct and positive instruction on the law of circumstantial evidence; for the jury was not to be left to reconcile propositions by mere argument and inference. Toncrey v. Railroad, 129 Mo. App. 602. (12) The mere fact that a direction as to a finding for respondents was contained one time or four times in the instruction was not material error. It was a mere matter of repetition and not material. Baird v. Wilks, supra; Ghio v. Railroad, 125 Mo. App. 716. (13) Instruction No. 2 was not as strong for respondents as they were entitled to under the law. It authorized the jury to find for plaintiff, "if the facts and circumstances in evidence, when considered altogether (not plaintiff's evidence alone) were such as to prove (not beyond a reasonable doubt) to their satisfaction" that the fire was caused by sparks from one of defendants' engines. Respondents were entitled to an instruction telling the jury that the circumstances relied on by plaintiff must be such as to exclude every other reasonable conclusion than the principal fact. Fritz v. Railroad, supra, 78. (14) That the most probable source or cause of a fire is from sparks from an engine, in the absence of evidence

to the contrary, is sufficient to make a prima facie case, the determination of which is for the trial court; but the jury ought to be instructed to go further than this—they ought to be instructed to find, not that the engine was the most probable cause or source of the fire, but that it was the origin and source of the fire. See authorities under Point I. (15) The objection to instruction No. 2 that the words "that it is not sufficient to entitle the plaintiff to recover, that there may be a probability or even a strong suspicion that the fire mentioned in the evidence was caused by sparks from one of defendants' trains," because it was by the use of this language made to appear to the jury that "probability" is of less weight than suspicion, is super-technical—surely the correctness of an instruction does not depend upon the mere transposition of words.

BARNES, C.—This suit was instituted in the Circuit Court of Franklin County, Missouri, on the 5th day of February, 1915. The body of the petition as amended at the trial is as follows:

"Plaintiff for its cause of action against defendants states that all times hereinafter mentioned, plaintiff was and is a corporation engaged in the business of fire insurance and duly authorized and licensed by the State of Missouri to do such fire insurance business in the State of Missouri; the St. Louis and San Francisco Railroad Company was and is a corporation engaged as a common carrier in the operation of railroads within the County of Franklin and other counties in the State of Missouri, and elsewhere; James W. Lusk, Wm. B. Biddle and Wm. C. Nixon were and are receivers of said railroad, duly appointed as such by the United States District Court for the Eastern District of Missouri, under orders made and issued on or about July 3, 1913, August 17, 1913, and December 8, 1913, and were and are operating it, and L. E. Pierce and Sam Hunsaker were and are residents of Morrellton (sometimes known as Anaconda), in Franklin County, Missouri, and there engaged in business as

copartners under the firm name of Pierce & Hunsaker (Anaconda Cash Store).

"'Plaintiff further states that on September 3, 1913, which was the date of the issuing of the policy of insurance hereinafter mentioned, said L. E. Pierce and Sam Hunsaker (hereinafter referred to as Pierce & Hunsaker), were the sole owners of a certain stock of groceries, hardware, household supplies and other goods such as are usually kept for sale in country stores, and they continued in sole ownership of said stock of goods, except as it was damaged or destroyed by the fire hereinafter described, until the date of the filing of this petition; that on September 3, 1913, in consideration of a certain sum of money, as premium, to it paid by said Pierce & Hunsaker, the plaintiff issued to said Pierce & Hunsaker a certain policy of insurance, insuring said Pierce & Hunsaker against loss or damage by fire to the stock of goods hereinbefore described, for the period of one year from said date, to the amount of twenty-eight hundred ($2800) dollars; that on March 18, 1914, in consideration of a certain further sum of money, or premium, to it paid by said Pierce & Hunsaker, the plaintiff issued to said Pierce & Hunsaker a certain further policy of insurance, insuring said Pierce & Hunsaker against loss or damage by fire to the stock of goods hereinbefore described, for the period of one year from said date, to the amount of seven hundred ($700) dollars; that on July 13, 1914, and while both of said policies of insurance were in full force and effect, the said stock of goods, being of a cash value far in excess of thirty-five hundred ($3500) dollars, was wholly destroyed by fire.

"Plaintiff further says that the fire which destroyed and damaged the said stock of goods was communicated thereto by a locomotive engine in use upon the railroad owned or operated by James W. Lusk, Wm. B. Biddle and Wm. C. Nixon, receivers (hereinafter referred to as defendant receivers), as above set out.

"Plaintiff further states that by reason of said fire and by virtue of said policies of insurance, said plaintiff

became liable to pay to said Pierce & Hunsaker the sum of thirty-five hundred ($3500) dollars, which sum plaintiff has long since paid, and that upon and by the payment of said sum, plaintiff became and was subrogated to all the rights of the said Pierce & Hunsaker against defendant receivers, for the recovery of the said destruction and damage of said stock of goods as aforesaid.

"Plaintiff further states that in consideration of $35000.00 paid by it to said Pierce & Hunsaker all claims of said assignors against defendant from the fire herein described were assigned to plaintiff by said Pierce & Hunsaker.

"Plaintiff further states that (amending its petition by leave of Court at time of trial) the said Pierce & Hunsaker did, after the filing of this suit, settle with the defendants, Lusk et al., receivers of the St. Louis and San Francisco Railroad (defendant receivers), for all of their loss arising from said fire, over and above the amount paid them by the plaintiff insurance company as herein alleged.

"Plaintiff further states that by reason of all the premises aforesaid, a right of action accrues to plaintiff against defendants and plaintiff alleges that it has sustained damages in the sum of thirty-five hundred dollars, ($3500), for which amount, together with its costs in this action, it prays judgment."

To which defendant, now respondent, made answer as follows:

"Come now the defendants, Lusk, Biddle and Nixon, in the above entitled cause of action, and answering plaintiff's petition filed in said cause, deny each and every allegation in said petition contained.

"And for further answer to said petition these defendants say that after the stock of goods mentioned in said petition was in imminent danger of being destroyed by fire, at the time and place complained of in said petition, the defendants, L. E. Pierce and Sam Hunsaker, by the exercise of ordinary diligence on their part, could

have saved and caused to be saved from destruction by fire the stock of goods mentioned in plaintiff's petition.

"And defendants allege that thereafter and on the — day of ——— of the year ——, in consideration of the sum of nine hundred dollars ($900) to said firm paid by defendants, Lusk, Biddle and Nixon, said firm, in writing, released and discharged said defendants from all liability, if any, to said firm on account of said fire.

"Having fully answered, defendants asked to be discharged with their costs."

which was in turn replied to by plaintiff appellant, in the following language:

"Comes now the plaintiff, and for reply to defendants' answer, denied each and every allegation of new matter in said answer contained.

"Further replying, plaintiff states that heretofore, to-wit, on August 26, 1914, and again on September 30, 1914, and long prior to any payment to said Pierce & Hunsaker by defendant herein, plaintiff notified the defendant of the fact that plaintiff had paid to said Pierce & Hunsaker that portion of their loss covered by the policy contract heretofore pleaded and that it was subrogated to all of the rights of said Pierce and Hunsaker against defendants for causing said loss, and that it would look to defendants for its damages. And plaintiff further states that this suit was filed on ———, 1914, and service had on defendants herein on ———, 1914, both dates being prior to the payment of any sum whatever by defendants to said Pierce & Hunsaker by reason of said loss. And plaintiff states that any alleged attempt on defendants' part to settle with said Pierce & Hunsaker for the portion of the said loss covered by the payment of the money under the insurance policy, as heretofore pleaded, and after notice, and any alleged release of same, is a fraud in law upon plaintiff and is of no avail.

"Further answering, plaintiff states that on February 13, 1915, or thereabouts, defendants did pay to Sam Hunsaker, claiming to represent the said firm of

Pierce & Hunsaker (Anaconda Cash Store) a large sum of money. And plaintiff is informed and verily believes it to be true that thereupon said Hunsaker executed some form of receipt and release, the exact wording of which is to the plaintiff unknown. Plaintiff states that this payment was made and accepted in an attempt to settle and compromise the claim of Pierce & Hunsaker for that portion only of their damages caused by said fire, over and above the portion represented by the payment made by plaintiff herein, by reason of the insurance contract, and as consideration for the assignment and subrogation to it of the claim of said Pierce & Hunsaker against said defendants as hitherto pleaded.

Wherefore, plaintiff renews its prayer for judgment.''

This cause was first tried at the March Term, 1915, of said court, resulting in a verdict for plaintiff in the sum of fourteen hundred dollars. Both parties filed motions for new trial, defendants' motion was withdrawn and plaintiff's motion was sustained. The cause was re-tried at the August Term, 1916, of said court, resulting in a verdict and judgment for defendants. After unsuccessful motions for new trial, proper steps having first been taken, the case was brought here, and submitted solely upon alleged errors in the giving of defendants' instructions, three in number, to the giving of which proper exceptions have been duly preserved.

The abstract of the record sets out the evidence adduced on the part of the appellant, and none of the evidence tendered by respondents, other than such as was elicited by cross examination together with this statement:

''Defendant, to sustain the issues on its part, introduced the following evidence, tending to prove each and every allegation of defendant's answer.

''Defendant introduced substantial evidence tending to show that sparks did not come from the Frisco engine, mentioned in the pleadings, and that this engine was equipped with a spark arrester, from which sparks could

not escape, and that sparks from this engine did not cause the fire, but that the fire was started by Pierce himself; and, further, defendant introduced evidence tending to show that Pierce & Hunsaker did not save as much goods and property from the fire as they might reasonably have saved.''

Respondents' additional abstract sets out the following statement from the bill of exceptions:

''Defendants, to sustain the issues on their part introduced evidence tending to prove each and every allegation of defendants' answer.''

In view of the foregoing statements with reference to respondent's evidence at the trial, we have set out the pleadings. The evidence on the part of the appellant tended to prove, the allegations of its petition, and with reference to the origin of the fire, as follows:

Pierce and Hunsaker were partners engaged in general merchandising, under the style of ''Anaconda Cash Store,'' at Morrellton, platted ''Dry Branch,'' Anaconda Station, being a point on ''The Frisco'' Railroad in Franklin County, Missouri, maintaining their stock, of the value of some sixty-five hundred dollars, in an old, two story, shingle roof building, 45 feet long by 41 feet wide. A little scuttle hole would permit passage through the ceiling of the second story to the space between it and the roof, designated as an attic, by some of the witnesses, and which was not put to any use. The building was owned by one Hibbard, and was located on the south of the fifty foot railroad right-of-way, a portion of the store building being on the right-of-way. On Monday, the 13th day of July, 1914, between three and four o'clock A. M., a light wind was blowing from the tracks towards the store building; the preceding nine or ten days had been very hot and dry; no fire in the building since the winter month, the stove had been taken down and was stored on one of the porches to the building; no light in the store since the Saturday night previous, which was from an acetylene plant, and the store had not been opened since Sunday noon. One of respondents' heavy

east bound freight trains was observed to pass the store, drawn by an engine emitting numerous sparks to a height of fifteen to fifty feet, and throwing big sparks every few minutes.    There are heavy railroad grades on either side of Anaconda Station, and other engines of respondents' have been observed to throw sparks to distances beyond that of the Hibbard store from the railroad track, several times resulting in the ignition of grass.    Within from five to twenty minutes after the train had passed, fire was discovered upon the western slope of the roof of the building near its center, described by various witnesses as being 3 inches by 4 inches; to the size of the bottom of a gallon bucket; a tub; half as big as a wagon box; and to even greater proportions, depending upon the time of the observation.    The fire was communicated from the Hibbard store to other buildings, which were likewise totally destroyed.

The court instructed the jury on behalf of appellant as follows:

"The court instructs the jury that each railroad corporation, or receiver thereof, owning or operating a railroad in this State, is responsible in damages to every person whose property is injured or destroyed by fire communicated directly or indirectly by locomotive engines in use upon such railroad; and if the jury find and believe from the evidence that defendant owned or were operating on July 13, 1914, the railroad mentioned in the evidence, and that the stock of goods belonging to Pierce and Hunsaker and mentioned in the evidence was destroyed by fire on said date, communicated directly or indirectly thereto by a locomotive engine in use upon said railroad, and if the jury further find and believe from the evidence that at the time of such fire the plaintiff was bound to Pierce and Hunsaker by a valid contract or contracts of insurance against loss or damage to said stock of goods by fire, and if the jury find and believe from the evidence that by reason of such fire and such contracts of insurance (if the jury find there was such fire and there were such contracts of insurance), the

said plaintiff did pay to said Pierce and Hunsaker the amount of their loss under said contracts of insurance, and if the jury further find and believe from the evidence that in consideration of such payment, said Pierce and Hunsaker did assign to said plaintiff and subrogate said plaintiff to, their rights of action against said defendants arising out of the said fire and with relation to said stock of goods, then your verdict shall be for the plaintiff.

"The court instructs the jury that if your verdict is in favor of the plaintiff, you will find for the plaintiff for such sum as equals the reasonable value of the stock of goods owned by Pierce and Hunsaker, and covered by contracts of insurance read in evidence, and destroyed by fire on July 13, 1914, but in any event your verdict will not be for more than $3,500.

"The court instructs the jury that you are the sole judges of the credibility of the witnesses, and of the weight and value to be given to their testimony.

"In determining what credit you will give to a witness, and what weight you will attach to his testimony, you will take into consideration the character of the witness, the conduct and appearance of the witness upon the stand, the interest of the witness, if any, in the result of the trial, the motive actuating the witness in testifying the witness' relation to or feeling for or against the parties, the probability or improbability of the the witness' statements, the opportunity that the witness had to observe and to be informed as to the matters respecting which such witness gives testimony, and the inclination of the witness to speak truthfully or otherwise as to matters within the knowledge of such witness.

"All these matters being taken into account with all the other facts and circumstances given in evidence, it is your province to give to each witness such credit, and the testimony of each witness such value and weight as you deem proper.

"If upon consideration of all the evidence, you conclude that any witness has sworn willfully falsely as to any material matter involved in the trial, you may re-

ject, or treat as untrue, the whole, or any part of such witness' testimony.

"The court instructs the jury that it is the law that an insurer against loss by fire is subrogated to the rights of the insured against the wrongdoer causing the loss, to the extent of any payment made to the insured under the policies, on account of the loss sustained; and if the jury find and believe from the evidence that plaintiff paid, under the policies read in evidence, to Pierce and Hunsaker, the sum of thirty-five hundred dollars as and for the loss sustained by them on account of the fire that destroyed the stock of goods mentioned in the evidence, if you believe the same to be the facts and that plaintiff's liability amounted to that figure, and if you further believe from the evidence that thereupon Pierce & Hunsaker made and delivered to the plaintiff their articles of subrogation or assignment, read in evidence, and gave notice thereof to the defendant receivers on or about September 30, 1914, then the jury is instructed that plaintiff is subrogated to the rights of said insured to said extent and any settlement thereafter made by said Pierce & Hunsaker with the defendant, on account of said loss by fire, is void as to plaintiff and is no defense to this action. Subrogation as used in these instructions means that plaintiff has acquired all the rights of said Pierce & Hunsaker which they may have had, if any, against defendant by reason of fire mentioned in the evidence to the extent aforesaid."

and upon behalf of respondent as follows:

1.

"The court instructs the jury that no burden rests upon the defendants in this case to prove how, or by what means said fire was started, or commenced."

2.

"The court instructs the jury that it is not sufficient to entitle the plaintiff to a verdict in this case that there

may be a probability or even a strong suspicion that the fire mentioned in the evidence was caused by sparks from one of defendant's trains;

"But your verdict must be for defendant unless you find and believe from the evidence that said fire was caused by sparks from one of defendant's trains then being operated by them by and through their agents and servants.

"You are further instructed that in this case the plaintiff is seeking to recover on evidence that is purely and altogether circumstantial, and before you will be warranted in returning a verdict for plaintiff the facts and circumstances in evidence, when considered altogether, must be such as to prove to your satisfaction, by the preponderance, that is to say, by the greater weight of all the credible evidence in the case, that the said fire was caused by sparks from said train; and unless you so find and believe the facts to be, your verdict must be for defendant."

### 3.

"You are instructed that if you believe and find from the evidence in this case that after the stock of goods mentioned in the evidence was by defendants Hunsaker and Pierce known to be in imminent danger of destruction by fire, said Hunsaker and Pierce, or either of them, could have, by the exercise of ordinary diligence on their part, or on the part of either of them, saved or caused to be saved, any part of said goods, then it was the duty of both of them to do so; and there can be no recovery in this case for such part of said goods, if any, as you may find and believe from the evidence could have been saved by said Hunsaker and Pierce by the exercise of ordinary diligence on their part.

"Ordinary diligence as used in these instructions means such care and diligence as would be used by an ordinarily prudent person under the same or similar circumstances."

Objection is made to respondents' first instruction, that it selects one of the issues and creates a false impression in the minds of the jury by telling them that no burden rested on defendant to explain "how or by what means fire was started," because that phrase means a deliberate, human, intentional act on the part of same human being. With the definition in mind, given by the Century Dictionary, of start:

"To originate; begin; set in motion; set going; give the first or a new impulse to; as, to start a fire."

we find no fault with the use of the words "fire was started" in view of its context in the instruction. And altho it is undoubtedly the law that the burden of proof was upon the appellant, to prove that the fire was communicated, directly or indirectly, to the destroyed property by one of respondents' locomotives, and respondents were offering testimony tending to show that the fire was started by Pierce himself, we believe it highly preferable that the instruction should state where the burden of proof is, rather than where it is not.

Nor do we find reversible error in the giving of respondents' third instruction, because it submitted to the jury the diligence of the insured in removing stock, rather than, whether it was safe for them to have continued longer the work of salvaging the goods. This instruction was bottomed upon one of respondents' pleaded defenses, upon which issue had been joined and testimony adduced; and all reference to which was omitted from appellant's instruction undertaking to cover the whole case. Diligence has been defined by both the Century and Oxford dictionaries, as,

"The attention and care due from a person in a given situation."

This instruction presupposes, of course, that the fire destroying the stock of merchandise, was either directly or indirectly communicated thereto from one of respondents' engines. The omission of this statement from the instruction would appear to be rather favorable to appellant. [Mahoney v. K. C., 106 Mo. App. 39, 79 S. W.

1168; Logan v. Railroad, 96 Mo. App. 461, 70 S. W. 734; Knight Brothers v. Railroad, 122 Mo. App. 38, 98 S. W. 81.

Respondents' second instruction is attacked because it uses the word "credible" in contrast to the word "circumstantial" as applied to the evidence. Credible, as applied to persons, quoting from the Century dictionary means,

"Worthy of credit or belief, because of known or obvious veracity, integrity or competence"
and as applied to things,

"Capable of being credited or believed because involving no contradiction, absurdity, or impossibility, believable."

It is plain therefore, that it is used in a highly proper sense, especially in view of appellant's instruction on the credibility of witnesses, and that it is not used in contrast with circumstantial evidence.

Appellant also contends, that it was error to charge in the one instruction that the jury must, "find and believe from the evidence," and "find from a greater weight of all the credible evidence in the case," that the sparks caused the fire. The latter phraseology is one to which the respondent was justly entitled, and the first phrase, if weaker, inured to the benefit of appellant.

Appellant further contends that this instruction was erroneous in that it states that *probability* of respondents' fault was not sufficient to entitle the plaintiff to a verdict, because probability is equivalent to preponderance of evidence, and it is made to appear to be entitled to less weight than suspicion, which has no legal standing as the basis of a verdict, and that it unduly emphasized the burden of proof and declared that appellant sought to recover solely upon circumstantial evidence.

It will be noted by reference to the statement of the evidence introduced by plaintiff, tending to show the origin of the fire, that it was purely and altogether circumstantial, or strictly circumstantial, Fritz v. Railroad, 243 Mo. 62, 148 S. W. 74; Hudspeth v. Railroad, 172

Mo. App. 579, l. c. 585, 155 S. W. 868; Campbell v. Mo. Pac. Ry., 121 Mo. 340, l. c. 349, 25 S. W. 936; Dawson v. Railroad, 197 Mo. App. 169, 193 S. W. 43, but the remainder of the proof required by appellant to support the allegations of its petition was direct, and was submitted to the jury under appellant's first instruction. The introduction of much of the testimony tending to prove the allegations of the petition, other than the origin of the fire, was objected to, and only a few of the allegations were admitted.

The frame work of this instruction is that the jury's verdict must be for defendant; not "thrice," but four times does it appear therein, amounting to such repetition as might perhaps have influenced the jury to believe that the court entertained the view that plaintiff was not entitled to a verdict.

To sustain the use of the word "probability" in this instruction, learned counsel for respondents urge that the real issue for the jury is not to find whether there was a probability, but they must affirmatively find from all the facts and circumstances the facts that the fire was caused by or communicated from one of defendants' engines.

Probability has been defined by the Oxford Dictionary as,

"The quality or fact of being probable; appearance of truth, or liklihood of being realized, which any statement or event bears in the light of present evidence, liklihood"

and by the Century Dictionary as,

"The state or character of being probable; liklihood; appearance of truth; that state of a case or question of fact, which results from superior evidence or preponderation of argument on one side, inclining the mind to receive that as the truth, but leaving some room for doubt."

This instruction told the jury, that the plaintiff was not entitled to a verdict, upon the probability that the fire mentioned in the evidence was caused by sparks from

one of defendants' engines; at the same time telling the jury that plaintiff's evidence was purely and altogether circumstantial. It was because the circumstances introduced in evidence tended to show the possibility and consequent probability (Campbell v. Mo. Pac. Ry. Co., supra; Dawson v. Railroad, supra) that the fire was communicated to the destroyed property, directly or indirectly, by one of defendants' engines, that caused the learned trial judge to submit, and we believe rightly, the issue to the jury, and the jury thereby had submitted to it the fact of a probability, that the fire was so communicated, and if the jury found as a fact that such probability existed, it had a right to infer therefrom the logical conclusion and find the ultimate fact that the fire was communicated to the destroyed property by one of defendants' engines. [Fritz v. Railroad, 243 Mo. 62, 148 S. W. 74; State ex rel. v. Ellison, 268 Mo. 239, 1. c. 250, 187 S. W. 23.] Therefore, the instruction was practically a peremptory instruction to find for defendant.

Had defendant used the word "possibility" instead of "probability," the instruction would have been free from this error, but we do not believe that having used probability in connection with the word suspicion, that it can be tortured into the construction of having been understood by the jury to be the equivalent of possibility, for the very preponderance of evidence may depend upon the fact of a probability. [Stanton v. Southern Railroad, 56 S. C. 398.]

The giving of this instruction was prejudicial error, and the Commissioner recommends that the judgment of the trial court be reversed, and the cause remanded.

The opinion herein was filed November 4, 1919, a rehearing granted respondent, and the case reargued May 21, 1920.

PER CURIAM:—The foregoing opinion of Barnes, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed and the cause remanded. *Reynolds, P. J.,* concurs, *Allen, J.,* and *Beck-*

*er, J.,* concur in the result in a separate opinion by *Allen, J.*

### SEPARATE CONCURRING OPINION.

ALLEN, J.—I concur in the result reached by our learned Commissioner, but not in all of the language used in dealing with the crucial question in the case, namely, the propriety of the court's action in giving defendant's instruction No. 2. The first paragraph of that instruction tells the jury that "it is not sufficient to entitle the plaintiff to a verdict in this case that there may be a probability, or even a strong suspicion, that the fire mentioned in the evidence was caused by sparks from one of defendant's trains." I think that this part of the instruction is misleading, in that its effect is to tell the jury that they cannot return a verdict for plaintiff upon evidence which goes no farther than to make it appear probable that the fire was set out by sparks from defendant's engine. It is true that it is the duty of the jury to determine the ultimate issue of fact, viz., whether the fire did or did not orginate as alleged in the petition. And in order to return a verdict for plaintiff the jury must believe and find that the fire was in fact set out by a spark or sparks from defendant's engine. [See Taylor v. Lusk, 194 Mo. App. 133, 187 S. W. 87.] But in order for them to so find, it is not necessary that there be direct and positive evidence that the fire so originated; on the contrary the jury may make such finding upon all of the facts and circumstances in the case as shown by the circumstantial evidence adduced. And between two hypotheses, appearing from such evidence, the jury may choose that which in their judgment is the more reasonable and probable, and, by adopting that hypothesis, say by their verdict that the fire did or did not originate in the manner alleged in the petition. And in so determining this ultimate issue of fact, the jury may rightfully adopt the hypothesis that the fire was communicated by a spark or sparks from defendant's engine, even though the evidence adduced in support thereof is not such as to entirely neg-

ative every other hypothesis as to the origin of the fire. [See State ex rel. v. Ellison, 268 Mo. 239, l. c. 250, 187 S. W. 23.] Under the circumstances, the jury, in arriving at their verdict, must of necessity reckon with the probabilities in the case. And that portion of the instruction quoted above would doubtless cause a jury to believe that under the evidence here adduced they could not rightfully find in favor of plaintiff, though the evidence made it appear altogether reasonable and probable that the fire was communicated from defendant's engine; whereas, in truth, the jury could with propriety return a verdict for plaintiff upon just such evidence, if it sufficed to induce the belief in their minds that the fire occurred in such manner.

As pointed out by our Commissioner, the court by this instruction, in effect, refers to evidence such as would raise a probability as to the origin of the fire as being of less strength or probative force than evidence tending to raise a "strong suspicion" as to the origin thereof. But apart from this, the first paragraph of the instruction, is I think, misleading, for the reason stated above, and the effect thereof prejudicial to plaintiff.

What follows in the instruction does not, I think, cure or render harmless the portion thereof set out above, if that be possible. The instruction, taken as a whole, would doubtless create the belief in the minds of the jury that they could not find that the fire originated from a spark or sparks from defendant's engine, in the absence of positive testimony to this effect, though the circumstantial evidence made it appear reasonable and probable that such was the fact.

The concluding portion of the instruction may be subject to criticism on the ground that it contains an unwarranted comment upon the character of the testimony adduced by plaintiff as to the origin of the fire, i. e., as being "purely and altogether circumstantial;" but whether this alone would constitute reversible error we need not say. *Becker, J.,* concurs in these views.